IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

       Plaintiff,

v.

GARY STEPHANY,

       Defendant.

Criminal No. 08-0303
**ELECTRONICALLY FILED**

### MEMORANDUM ORDER DENYING DEFENDANT'S MOTION TO DISMISS (DOC. NO. 26)

**I. Introduction.**

Before the Court is a Motion to Dismiss Indictment (doc. no. 26) filed by the defendant, Gary Stephany, who was charged on August 12, 2008 with one count of assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1) and (b). Subsection (a)(1) provides for the punishment of any person who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [officer or employee of the United States or of any agency in any branch of the United States Government] while engaged in or on account of the performance of official duties." Subsection (b) calls for an enhanced penalty when, in the commission of any act described in subsection (a), a person "uses a deadly or dangerous weapon . . . or inflicts bodily injury."

The defendant filed his motion on November 24, 2008, contending that the U.S. Marshals whom he allegedly assaulted were not engaged in the performance of official duties at the time of the offense. Specifically, the defendant avers that, under 28 U.S.C. §§ 564 et seq., the Marshals' authority extends only to arrests without a warrant for federal offenses committed in their presence, to arrests for any federal felony regardless of their presence so long as probable cause

exists, to the investigation of federal fugitive matters authorized by the Attorney General, and to whatever a local sheriff can do with respect to federal laws. Because the defendant was wanted only on state charges, he argues that the Marshals were acting beyond the scope of their authority and, as a result, were not engaged in the performance of official duties.

On December 31, 2008, the government filed a response to the defendant's motion (doc. no. 38), wherein it argued that the Marshals were acting pursuant to explicit directives set by the United States Marshal Service ("USMS") and were thus engaged in the performance of official duties. On January 22, 2009, this Court heard arguments and received evidence on the defendant's motion and the government's response, and both parties stipulated to the following facts as set forth in the government's response.

**II. Factual Background.**

So that the federal government may work closely with and aid state and local law enforcement agencies, the USMS created the Greater Pittsburgh Fugitive Task Force ("FTF"). Pursuant to the most recent Memorandum of Understanding ("MOU") regarding task forces in the Western District of Pennsylvania, the United States Attorney's Office and authorized members of various law enforcement groups specifically delineated that the FTF was to be indefinite in duration. Government's Response to Defendant's Motion to Dismiss (doc. no. 38), Exhibit 1. The FTF continues to work under this MOU at the present date, and personnel assigned to the FTF are sworn in and appointed as Special Deputy United States Marshals ("SDUSM").

Coordinated by the USMS, Operation FALCON (Federal and Local Cops Operating Nationally) is a nationwide fugitive apprehension operation that was originally conducted during

2

the National Crime Victim's Rights Week (April 4-10, 2005). FALCON 2008 was the fifth effort in a continuing series of national fugitive apprehension missions spearheaded by the USMS. During FALCON 2008, the FTF joined with numerous state and local law enforcement agencies to arrest federal, state, and local fugitives in the Western District of Pennsylvania.

At the request of participating Washington County Sheriffs, the defendant was added to the list of fugitives targeted for apprehension. Like the majority of wanted fugitives arrested during FALCON 2008, the defendant was apprehended based upon active state arrest warrants, for which he had at least three (3) outstanding. On June 17, 2008, multiple federal, state, and local officers went to 1912 Tiffany Street in Pittsburgh, Pennsylvania to arrest the defendant. All personnel were clearly identified by their uniforms and/or clothing as law enforcement officers. While officers were speaking to a civilian known to the defendant, the defendant's vehicle was seen driving up his driveway. Upon observing the officers at his residence, the defendant stopped his vehicle, changed gears, and began to flee in reverse. Deputy U.S. Marshal Jon Gallagher and SDUSM Geoff Long (a state parole officer assigned to the FTF) positioned their vehicle in the driveway to prevent the defendant's escape. Despite visible signs that the Marshals were law enforcement, the defendant rammed their USMS vehicle with his own. The defendant was arrested shortly after the collision.

### III. Discussion.

The defendant concedes that U.S. Marshals Gallagher and Long are officers protected by 18 U.S.C. § 111(a)(1) and (b). Therefore, the sole issue before the Court is whether the Marshals were assaulted "while engaged in or on account of the performance of official duties," as required to sustain the charge against the defendant.

18 U.S.C. § 111 does not define the term "official duties." Indeed, there is no bright-line test for determining what constitutes "performance of official duties." *See United States v. Hoffer*, 869 F.2d 123, 125 (2d Cir. 1989) ("There is no bright-line test to define 'performance of . . . official duties[.]'"); *United States v. Boone*, 738 F.2d 763, 765 (6th Cir. 1984) (stating that the parameters of the requirement that a federal official be engaged in the performance of official duties are "inherently fluid" and that "[w]hile time and place may be of decisive importance in many cases, in others the mission may be of critical importance"). When called upon to make such a determination, courts have narrowed their inquiry by following the reasoning of *United States v. Heliczer*, 373 F.2d 241, 245 (2d Cir. 1967), which states: "'Engaged in [] performance of official duties' is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own." Expanding upon this "test," the Court in *United States v. Street*, 66 F.3d 969 (8th Cir. 1995) stated:

> The scope of what the agent is employed to do is not defined by whether the officer is abiding by laws and regulations in effect at the time of the incident, nor is the touchstone whether the officer is performing a function covered by his job description. The courts have opted instead for an interpretation of this phrase that is broad enough to fulfill Congress's goals of protecting federal officers and facilitating the accomplishment of federal functions. They look to whether the officer's actions fall within the agency's overall mission, or are what an officer ought to do because of being an officer.

*Id.* at 978 (internal quotations and citations omitted).

There have been a number of non-routine situations in which federal officials were assaulted during what was later held to be the performance of official duties. *See*, *e.g.*, *United States v. Hoy*, 137 F.3d 726, 727-28 (2d Cir. 1998) (in accordance with

4

unwritten USMS policy authorizing assistance to citizens in harm, a United States Marshal intervened in altercation between defendant and defendant's wife, where he was punched several times by defendant); *United States v. Clemons*, 32 F.3d 1504, 1508 (11th Cir. 1994) (DEA Special Agent was murdered in his car while traveling to a meeting concerning an investigation being conducted jointly by the DEA and a local police department); *United States v. Lopez*, 710 F.2d 1071, 1072-73 (5th Cir. 1983) (federal customs officer nearly struck by vehicle driven by defendant while the officer attempted to detain a fugitive); *United States v. Reid*, 517 F.2d 953, 955-56, 960 (2d Cir. 1975) (acting pursuant to DEA manual instructing agents to take action to prevent the commission of a felony or violent misdemeanor, a DEA Special Agent attempted to stop the robbery of a liquor store and was shot by one of the defendants); *see also United States v. Stubler*, 2006 WL 3043073, at *3 (M.D. Pa. 2006) (retaliation by defendant against the United States Probation Officer who supervised him was found to be on account of the officer's official duties and, thus, a violation of 18 U.S.C. § 115(a)(2)).

In a case strikingly similar to the one at bar, the United States District Court for the Western District of New York found that a United States Marshal was engaged in the performance of official duties when he was assaulted by a state fugitive. *United States v. Cain*, 413 F.Supp.2d 197, 199 (W.D.N.Y. 2006). Pursuant to a memorandum of understanding between the New York State Police, the United States Marshal Service, and the United States Attorney's Office for the Western District of New York, federal officers, including the injured Marshal, accompanied state officers to the defendant's residence in order to assist them with executing a state arrest warrant. *Id.* at 198-99. The

5

defendant assaulted the Marshal during the attempted arrest and was subsequently charged with violating 18 U.S.C. § 111(a)(1) and (b). *Id.* at 198. In denying the defendant's motion to dismiss the indictment, the Court said that the issue was not whether "[t]he arrest or detention by the federal officer may or may not have been authorized by state law," *id.* at 198, but rather "whether the federal officers were 'engaged in the performance of their official duties' when they were allegedly assaulted[,] [which is] determined by federal, not state, law," *id.* at 199 (citing *Lopez*, 710 F.2d at 1073-74).

Persuaded by *Cain*, the Court finds the defendant's argument that U.S. Marshals Gallagher and Long were acting beyond the scope of the statutory authority cited in his brief to be immaterial. Likewise, the Court does not deem necessary to its decision the federal statutory law and policy directives cited by the government in its response. Whether the two Marshals were explicitly authorized by statute to arrest the defendant on a state misdemeanor warrant is not the critical issue. Rather, the focus is on whether the federal officers were acting within the scope of their official duties, and not engaged in purely personal endeavors, at the time of the alleged assault.

Applying the *Heliczer* test, U.S. Marshals Gallagher and Long were not engaging in a personal frolic of their own at the time of the alleged assault; rather, they were acting within the scope of what they were employed to do. Like the injured Marshal in *Cain*, Gallagher and Long were acting pursuant to a detailed memorandum of understanding, not to mention policy directives written by the USMS, when they assisted local law enforcement officers with the apprehension of Mr. Stephany, who was a state fugitive at the time. Their actions at the time of the alleged assault fall squarely within the overall

defendant assaulted the Marshal during the attempted arrest and was subsequently charged with violating 18 U.S.C. § 111(a)(1) and (b). *Id.* at 198. In denying the defendant's motion to dismiss the indictment, the Court said that the issue was not whether "[t]he arrest or detention by the federal officer may or may not have been authorized by state law," *id.* at 198, but rather "whether the federal officers were 'engaged in the performance of their official duties' when they were allegedly assaulted[,] [which is] determined by federal, not state, law," *id.* at 199 (citing *Lopez*, 710 F.2d at 1073-74).

Persuaded by *Cain*, the Court finds the defendant's argument that U.S. Marshals Gallagher and Long were acting beyond the scope of the statutory authority cited in his brief to be immaterial. Likewise, the Court does not deem necessary to its decision the federal statutory law and policy directives cited by the government in its response. Whether the two Marshals were explicitly authorized by statute to arrest the defendant on a state misdemeanor warrant is not the critical issue. Rather, the focus is on whether the federal officers were acting within the scope of their official duties, and not engaged in purely personal endeavors, at the time of the alleged assault.

Applying the *Heliczer* test, U.S. Marshals Gallagher and Long were not engaging in a personal frolic of their own at the time of the alleged assault; rather, they were acting within the scope of what they were employed to do. Like the injured Marshal in *Cain*, Gallagher and Long were acting pursuant to a detailed memorandum of understanding, not to mention policy directives written by the USMS, when they assisted local law enforcement officers with the apprehension of Mr. Stephany, who was a state fugitive at the time. Their actions at the time of the alleged assault fall squarely within the overall

mission of the USMS, as detailed by FALCON 2008, and they were simply doing what they were assigned to do under the MOU. *See Street*, 66 F.3d at 978. Because a jury could find that U.S. Marshals Gallagher and Long were engaged in the performance of official duties when the defendant struck their vehicle with his own, the defendant's motion to dismiss will be denied.

For the foregoing reasons, IT IS HEREBY ORDERED that the defendant's Motion to Dismiss Indictment (doc. no. 26) is DENIED.

SO ORDERED this 9th day of February, 2009

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties